**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 19-58 (JEB)** |
| | : | |
| **v.** | : | |
| | : | |
| **RICARDO SELDON,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by its undersigned counsel, hereby files its Memorandum in Aid of Sentencing in this matter. For the reasons set forth below, the government asks the Court to sentence the defendant to one year of incarceration. The government further requests that the sentence be imposed consecutive to any other sentence.

## I. SENTENCING CONSIDERATIONS

In sentencing a defendant, after calculating the appropriate Guidelines range, the Court must consider the factors set forth in 18 U.S.C. § 3553. *See Gall v. United States*, 552 U.S. 38, 50 (2007). Courts traditionally consider the following factors when imposing a sentence: (1) the protection of society against wrongdoers; (2) the punishment or discipline of the wrongdoer; (3) the reformation of the wrongdoer; and (4) the deterrence of others from the commission of like offenses. *See Spanziano v. Florida*, 468 U.S. 447, 477-78 (1984) (Stevens, J., concurring); *see also Williams v. New York*, 337 U.S. 241, 251 (1949). Under the Guidelines and Section 3553, similarly situated defendants should receive like punishments. *See* 18 U.S.C. § 3553(a)(6).

## II. ARGUMENT

### A. Defendant's Criminal Conduct

The defendant was convicted of one count of Unlawful Possession of a Firearm (Prior Conviction), in violation of 22 District of Columbia Code § 4503(a)(I) on January 31, 2018. May

20, 2019 Presentence Investigation Report (PSR), ECF Document 9, ¶ 6. On April 12, 2018, an Associate Judge of the Superior Court for the District of Columbia sentenced the defendant to twenty-four months of incarceration, with four months suspended. PSR ¶ 6. While he was serving this sentence, the defendant applied for, and was granted, permission to complete the remainder of his sentence at the Residential Reentry Center in Washington, D.C. – specifically Hope Village located at 2840 Langston Place, SE, Washington, D.C. PSR ¶ 7.

After his arrival at Hope Village, the defendant signed a form acknowledging that he had received the Hope Village Resident Rules and Regulations, Terms and Conditions, and Waiver. PSR ¶ 7. The defendant was permitted, pursuant to these rules and regulations, to leave Hope Village for work. PSR ¶ 7. On January 25, 2019, at approximately 5:00 pm, the defendant signed out of Hope Village for work and was expected to return at 2:00 am the next day. PSR ¶ 7. The defendant did not return when expected because he was arrested in Prince George's County, Maryland. PSR ¶ 7.

Although he was released from custody in Maryland at approximately 12:48 pm on January 26, 2019, the defendant never signed himself back into Hope Village. PSR ¶ 8. Following his release, the defendant and calling on his behalf made contact with Hope Village staff members requesting advice on how he should proceed. PSR ¶ 8. The defendant appeared at Hope Village on January 28, 2019 and sought the advice of staff members as to whether he should sign in and enter the facility. PSR ¶ 8. Despite their advice to stay, the defendant decided to leave Hope Village and never returned. PSR ¶ 8. Approximately eight weeks later, the defendant turned himself in to police. PSR ¶ 8.

**B. Nature of the Offense and the Defendant's Criminal History**

With a significant criminal history spanning nearly two decades and having served several long periods of incarceration, the defendant was afforded the opportunity to transition back to society while residing at Hope Village and working in the community. Although the case stemming from his arrest in Prince George's County was ultimately dismissed, it appears that the defendant was abusing the limited liberty he had been provided. He compounded this poor choice by deciding, against the advice of multiple Hope Village staff members and despite having physically returned, that he did not want to check back in to the facility. Instead, the defendant left and chose to spend two months without supervision before turning himself in. He must now face the consequences of that choice.

The defendant's criminal history reveals that it is not uncommon for him to choose not to follow laws and rules. His record is replete with illegal weapons possession, including his first adult conviction (for Possession of an Unregistered Firearm), frequent institutional punishments for possession of "hazardous tools," and his most recent prior conviction for Unlawful Possession of a Firearm. When combined with his 2005 conviction for Possession With Intent to Distribute Cocaine, it shows that the defendant has frequently elected to put the community at risk. Although the defendant turned himself in to police, this occurred nearly two months after he had failed to return to the halfway house. Thus, rather than receiving the opportunity to gradually have the strictures of institutional life removed while working in the community, the defendant chose a lifestyle of complete freedom, where he would not have to drug test, verify his address, or be supervised in any way. Simply stated, the defendant's conduct shows that he does not intend to change course, particularly when considering that he is a thirty-six-year-old adult.[1]

[1] The government anticipates that the defense will attempt to reduce the defendant's sentence by arguing that he "returned voluntarily" within the meaning of U.S.S.G. § 2P1.1(b). Under this provision, if a "defendant escaped from

**C. <u>Punishment and Deterrence</u>**

The government believes that a sentence of one year of incarceration, which is at the bottom of the applicable Guidelines range, would be appropriate. This will protect the community and will further deter the defendant and others like him from failing to take the rehabilitative process at Hope Village seriously.

WHEREFORE, for the foregoing reasons and for any reasons that may be raised at the hearing in this matter, the government asks that the Court sentence the defendant as described above.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845

By: */s/ Andrew Floyd*
ANDREW FLOYD
Assistant United States Attorney
D.C. Bar No. 1023315
555 4th Street, N.W.
Washington, D.C. 20001
(202) 252-6841
Andrew.Floyd@usdoj.gov

---

nonsecure custody and returned voluntarily within ninety-six hours," without committing any other offense punishable by a term of imprisonment of one year or more, a court may decrease the base offense level by seven levels. *Id*. Application Note 2 in U.S.S.G. § 2P1.1 states that "'returned voluntarily' includes voluntarily returning to the institution or turning one's self in to a law enforcement authority as an escapee (not in connection with an arrest or other charges)." U.S.S.G. § 2P1.1 cmt. n. 2. Although the term "returned voluntarily" has not been previously examined by our Circuit, the Sixth Circuit has held that an inmate's "subjective intent to return" is not sufficient to earn the reduction where the inmate "did not return . . . when he had the opportunity to do so[.]" *United States v. Holcomb*, 625 F.3d 287, 292 (6th Cir. 2010) (where appellant was a passenger in a vehicle that returned and parked at the front entrance of prison camp, then rode away). Here, similarly, the defendant arrived at Hope Village, perhaps with the intent to return, but elected not to sign himself in and the left. It is counterintuitive that the defendant would receive a significant sentence reduction merely for appearing at the facility without entering it, particularly when he spent an additional eight weeks at liberty. The Court should therefore reject any request by the defense for a seven-level reduction based on these grounds.